

JAN 18 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHIMN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **MARKIES HURST,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: |
| | § | 7:22-cv-00067-RDP |
| **NAOS ON-SITE STAFFING, LLC,** | § | |
| | § | JURY DEMAND |
| Defendant. | § | |

## COMPLAINT

**I.   INTRODUCTION**

1. Plaintiff Markies Hurst ("Plaintiff" or "Hurst") institutes this action for monetary relief, declaratory judgment, injunctive relief, and equitable relief to secure the protection of and to redress the deprivation of rights protected under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981, as amended. The latter provides relief for discrimination in employment based on race only, and the former providing relief for discrimination based on race and or color.

**II.   JURISDICTION**

2. The jurisdiction of this Court is invoked under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, as amended, and 28 U.S.C. §§ 1331, 1343.

**III.   PARTIES**

3. Plaintiff, Markies Hurst, was and is a black African-American citizen of the United States who has fulfilled all conditions precedent to the institution of this action under Title VII of

1

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* The Plaintiff filed a timely charge of discrimination with the EEOC. The EEOC issued a right-to-sue letter on his charge of race and color-based discrimination, and he sued within 90 days of its receipt.

4. Defendant, NAOS On-Site Staffing, LLC, is subject to suit under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981. Defendant does business in this jurisdiction.

**IV.  STATEMENT OF FACTS**

5. In October 2019, Hurst went to the office of NAOS On-Site Staffing, LLC, ("NAOS"), looking for a job assignment at Vance plant owned by Mercedes-Benz U.S. International, Inc. ("Mercedes").

6. Plaintiff learned an entry-level assignment with Mercedes pays better with better benefits than NAOS's other customers, and he wanted an assignment with Mercedes.

7. NAOS represented then in a Facebook post or ad that it was placing employees at Mercedes.

8. Plaintiff sought an assignment with Mercedes, but NAOS discouraged him from formally seeking such. NAOS falsely told Plaintiff it was not currently assigning individuals to Mercedes and directed him to the company Samvardhana Motherson Peguform ("SMP"), a Mercedes supplier, for immediate assignment.

9. Plaintiff applied for a job with NAOS, NAOS hired Plaintiff, and it assigned him to an entry-level position at SMP.

10. Advertisements say SMP pays $17.00+ per hour, but when NAOS assigned him to SMP, it was for much less.

11. NAOS had other customers that allowed it to pay more for assignments than

Plaintiff received working for SMP.

12. The first thing Plaintiff noticed when he started with SMP was that almost all the hourly paid line workers he saw looked black or brown and of African or Hispanic race and or ethnicity.

13. Plaintiff also noticed that SMP leadership positions were mostly held by white Caucasians.

14. The people who live in the areas from which NAOS receives applications and hires are not overwhelmingly black or Hispanic.

15. As of July 1, 2019, according to United States Census Bureau's QuickFacts found online, the population for the counties from which NAOS may seek and obtain the applicants it hires and assigns to customers is 36.40% black or African American alone, and 56.36% white alone, not Hispanic or Latino.

16. Because NAOS offers exclusive, temporary entry-level, "try" hire staffing services to Mercedes, its suppliers, and many other large companies attractive to job seekers in the area, its assignments are highly sought.

17. Thus, absent race or ethnicity-based discrimination and regardless of customer, the demographic make-up of NAOS's applicant flow and newly hired should coincide with that of the local labor market.

18. Instead, a disproportionate number of NAOS employees assigned to SMP, greater than 95%, are non-white non-Caucasians like Plaintiff.

19. NAOS's facially neutral policies and or practices concerning assignments have caused segregation based on color or race so that non-Caucasian people of color almost wholly comprise the entry-level labor force it assigned to SMP. These policies caused a race and or color-

based segregation of NAOS's workforce where the number of white Caucasians sent to SMP to work lesser paying assignments is grossly underrepresented.

20. Intentionally or unintentionally, NAOS favored white Caucasians in assignment to positions that pay total compensation less than that paid to its employees assigned to SMP.

21. Furthermore, because SMP's poor work environment caused high turnover and NAOS has a policy that its employees that quit an assignment with SMP are ineligible for assignment to other customers, the latter causes a disproportionate number of non-white non-Caucasians to suffer disparate impact in assignment when rehired.

## V. CAUSES OF ACTION

### A. COUNT 1: TITLE VII AND § 1981 – RACE AND OR COLOR-BASED INTENTIONAL DISCRIMINATION

22. On an individual basis, under Title VII of the Civil Rights Act, as amended and § 1981, Plaintiff asserts Defendant's decision not to assign him to a position with compensation better than that associated with an assignment at SMP was (a) because of facially neutral policies having the effect of discrimination based on race (Title VII violation) and or color (Title VII violation), or in the alternative, (b) due solely to him race (Title VII and § 1981) and or color (Title VII), or in the alternative, (c) due substantially in part to him race (Title VII and § 1981) and or color (Title VII violation), *i.e.,* it was a motivating factor in Defendant's decision to assign him to SMP.

23. In support of this count, Plaintiff incorporates by reference the factual assertions of Paragraphs ¶¶3-21 above.

24. The disproportionate effects of NAOS's policies or assignment practices on non-white, non-Caucasian applicants confirm intentional discrimination.

25. The circumstances detailed above present a convincing mosaic of intentional

discrimination perpetuated by the Defendant

26. Plaintiff was qualified for assignments with NAOS's customers that paid better compensation than what he received assigned to SMP. Yet, white Caucasians were apprised of, directed to, and hired by NAOS for those assignments based on their race ethnicity, or color.

## VI. **PRAYER FOR RELIEF**

27. Plaintiff respectfully prays this Court assume jurisdiction and provide him injunctive relief and declaratory relief, equitable relief, back-pay (plus interest), the value of lost benefits, compensatory damages, punitive damages, attorneys' fees, costs, expenses, and all othim relief allowed or deemed just and proper by the Court.

Dated: January 18, 2022

Respectfully submitted,

/s/ Eric C. Sheffer
**ROBERT J. CAMP**
**ERIC C. SHEFFER**
Counsel for Plaintiff

**OF COUNSEL:**
**WIGGINS, CHILDS, PANTAZIS,**
**FISHIM & GOLDFARB, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
Telephone: (205) 314-0500
Facsimile:  (205) 254-1500
Email: rcamp@wigginschilds.com
        esheffer@wigginschilds.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

/s/ Eric C. Sheffer
**ROBERT CAMP**
**ERIC C. SHEFFER**